

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-21-00119-CV

**FALLS COUNTY APPRAISAL DISTRICT,
ALLEN MCKINLEY, AND ANDREW J. HAHN,**

**Appellants**

 **v.**

**WALLY R. AND VONCYLE RUSTY BURNS,**

**Appellees**

_____

**From the 82nd District Court
Falls County, Texas
Trial Court No. CV40782**

_____

## MEMORANDUM  OPINION

_____

The Falls County Appraisal District (FCAD), Allen McKinley, and Andrew J. Hahn

bring this interlocutory appeal challenging the trial court's denial of their third amended

motion for summary judgment.  We will affirm in part and reverse in part.

**Factual and Procedural Background**

Wally and Voncyle Burns (the Burnses) sued FCAD, McKinley (the former chief appraiser), and Hahn (the current chief appraiser), alleging in relevant part as follows in their live petition:

**IV.**
**BACKGROUND FACTS**

. . . .

8.      [The Burnses] understand the pressure faced by appraisal districts all over Texas to increase property assessed values, and property owners throughout the state have been feeling the effects of that pressure for several years.  However, neither the chief appraiser nor appraisal district has been authorized by law, rule or written guidance of the Comptroller of Public Accounts to simply "make up" assessments which impose arbitrary burdens on property owners – specifically rural homestead owners – in order to increase assessed values on property within the appraisal district.

9.      In late summer of 2019, [the Burnses] discovered that the Chief Appraiser at the time (Allen McKinley) and [FCAD] had, for the first time, identified an alleged "improvement" on [the Burnses'] rural homestead, described it as "HS UTILITIES", and assigned a predetermined flat value of an additional $6,000.00 to manipulate the overall assessed value on [the Burnses'] property.  A true and correct copy of the property appraisal information published by Defendant is attached hereto as Exhibit "A".

10.     On September 16, 2019, [the Burnses] sent a letter to the Falls County Appraisal Board, attention to Larry Boone (the chairman at the time), with a copy to the Chief Appraiser (Allen McKinley) concerning this unusual assessment.  A true and correct copy of that letter is attached hereto as Exhibit "B".  That letter attempted to summarize the events and positions that had been articulated at the August 22, 2019, Board Meeting at which the FCAD Board Chairman stated the position of [FCAD].  He asserted that the $6,000.00 property improvement assessment for rural homesteads was

because utilities provided "added value" to rural homestead property. As reflected in [the Burnses'] letter of September 16, 2019, however:

(a) Rural and incorporated homesites obtain their utilities from water mains and electrical transmission lines provided in the utility easement adjacent to the property. Property owners are responsible for making arrangement for connection to the utilities. Rural property does not gain "added value" over and above incorporated property when connecting to utilities.

(b) The difference between rural and incorporated areas is the supplier. The water utility in rural areas is supplied by a Water Supply Corporation ("WSC") while the water utility in the incorporated areas is supplied by city utilities. The development and maintenance of a water utility is provided through water rates in both cases. There is no "added value" to either property classification. Because of population density, water usage rates for WSC customers is [*sic*] typically double that of customers in incorporated areas. Marlin is the one exception due to the ongoing water infrastructure crises, resulting in higher water fees.

(c) When listing a rural property, realtors must disclose to prospective buyers if a homesite is dependent on the use of a septic system because the property becomes <u>less</u> desirable due to the recurring maintenance cost and not "added value" to the property.

(d) The "Homestead Utilities" property improvement assessment imposed on [the Burnses'] rural homestead is arbitrary and is not being applied equally to all properties in Falls County.

In summary, there is no "added value" to rural homesites for having utilities over homesites in incorporated areas. The added improvement of Homestead Utilities for rural homesteads is an unlawful arbitrary assessment not based on evidence as required by the guidelines of the Texas Property Tax Code.

11. Under Section 23.23 of the Texas Property Tax Code, there is a limitation on appraised value of a residence homestead. When appraising a residence homestead, the Chief Appraiser shall appraise the property at its market value. According to Section 23.23(e), a "new improvement" means an improvement to a residence homestead made after the most recent appraisal of the property that increases the market value of the property and the value of which is not included in the appraised value of the property for the preceding tax year.

12. Here, Allen McKinley, the Chief Appraiser at the time, acting outside his legal authority, assigned a new improvement, "HS UTILITIES" with a flat value of $6,000.00 to [the Burnses'] real property – which obviously is not a "new" improvement.[1] When pressed on the issue, no person at [FCAD], including the former and current Chief Appraiser, has been able to identify a statutory, regulatory or factual basis for arbitrarily assigning a $6,000.00 assessment to rural homestead owners only. Common sense compels the conclusion that "utilities" at a rural homestead are not an "improvement" subject to additional tax assessment over and above the structures served by those utilities.

13. The current Chief Appraiser, Andrew Hahn, and [FCAD] have continued to unlawfully impose/assign the "HS UTILITIES" assessment to [the Burnses'] property in 2020, despite having been given the opportunity to correct the unlawful assessment.

14. Then, by Order Determining Protest dated August 4, 2020 (copy attached as Exhibit "C"), less than 60 days prior to the filing of this Third Amended Petition, [FCAD] denied [the Burnses'] protest concerning the 2020 appraisal on the same property, where they specifically challenged to continued imposition of assessment for "HS UTILITIES". This action is an appeal of that assessment under Tex. Tax Code § 42.21.

---

1 A footnote in the petition here states:

Based on information obtained by way of an Open Records Request, [the Burnses] have learned that this arbitrary $6,000.00 "HS Utilities" flat assessment has been added to nearly 2800 rural property owners in Falls County – the effect of which has been an increase in each property owner's tax bill in excess of $100.00 for 2019. This "hidden tax" is unauthorized, unlawful, and unacceptable.

# V.
## REQUEST FOR DECLARATORY RELIEF AND RELIEF UNDER THE TEXAS TAX CODE

15.    [The Burnses] request that the Court declare that the designated "Improvement" contained on [the Burnses'] Falls County property for "HS UTILITIES" for the flat value of "$6,000.00" beginning in 2019 (and now continuing into 2020), is unauthorized, arbitrary and/or unlawful and excessive, and cannot form the basis for an added assessment on [the Burnses'] (or any other rural homestead owners) property. The Chief Appraisers acted beyond the scope of their authority and [FCAD] has failed, despite requests, to reverse the unlawful action taken by its Chief Appraisers.

FCAD, McKinley, and Hahn (collectively, Appellants) subsequently moved for traditional summary judgment. In their third amended motion for summary judgment, Appellants contended predominantly that the Burnses' suit should be dismissed, or, alternatively, that the Burnses should take nothing by their suit, because Appellants are protected by some form of immunity. The trial court denied Appellants' third amended motion for summary judgment. This appeal ensued.

### Issues

In four issues, Appellants challenge the trial court's denial of their third amended motion for summary judgment on the grounds that

(1)    FCAD has "governmental immunity for discretionary acts taken in fulfilling its legislative mandate that it appraise property at market value,"

(2)    Chief Appraisers McKinley and Hahn "have official immunity for discretionary acts taken in the scope of their employment in appraising property in their district,"

(3)     "the chief appraisers' assessment of an improvement for utilities [is] authorized by [Tax Code section] 23.01," and

(4)     the Burnses' "claims under the Property Tax Code for tax years 2019 and 2020 [are] barred."

### The Burnses' Claims Against FCAD

In their first issue, Appellants assert that FCAD has "governmental immunity for discretionary acts taken in fulfilling its legislative mandate that it appraise property at market value," and in their fourth issue, Appellants assert that the Burnses' "claims under the Property Tax Code for tax years 2019 and 2020 [are] barred." As will be explained below, Appellants' overall contention in these issues is that the trial court erred in denying their motion for summary judgment as to the Burnses' claims against FCAD because the trial court lacks jurisdiction over those claims.[2] Whether a court has subject matter jurisdiction is a question of law that we review *de novo*. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (per curiam).

### A.     Authority

Title 1 of the Tax Code contains the Property Tax Code. TEX. TAX CODE ANN. § 1.01; *see generally id.* §§ 1.01–43.04. In the Property Tax Code, the Legislature "provides

---

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (allowing appeal from interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit"). The Texas Supreme Court interprets "plea to the jurisdiction" in Civil Practice and Remedies Code subsection 51.014(a)(8) not to refer to a "particular procedural vehicle," but rather to the substance of the issue raised. *City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (per curiam). Therefore, if the trial court denies a governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, an interlocutory appeal may be brought under subsection 51.014(a)(8). *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

detailed administrative procedures for those who would contest their property taxes."

*Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam); *see generally*

TEX. TAX CODE ANN. §§ 41.01–.71.  In pertinent part, Tax Code section 41.41, entitled

"Right of Protest," provides:

> (a) A property owner is entitled to protest before the appraisal review board the following actions:
>
> > (1) determination of the appraised value of the owner's property . . . ;
> >
> > (2) unequal appraisal of the owner's property; [or]
> >
> > . . . .
> >
> > (9) any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner.

TEX. TAX CODE ANN. § 41.41(a).  The appraisal review board must "determine the protest

and make its decision by written order."  *Id.* § 41.47(a).

Under Tax Code section 42.01(a)(1)(A), a property owner is entitled to appeal the

order of the appraisal review board determining the protest by the property owner.  *Id.* §

42.01(a)(1)(A).  To appeal, the property owner "must file a petition for review with the

district court within 60 days after the [property owner] received notice that a final order

has been entered from which an appeal may be had or at any time after the hearing [on

the protest] but before the 60-day deadline."  *Id.* § 42.21(a).  Failure to timely file a petition

for review bars any appeal of the order of the appraisal review board to the district court.

*Id.*

Furthermore, "a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Rourk*, 194 S.W.3d at 502 (quoting *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005)). "The Texas Constitution expressly allows the Legislature to bestow exclusive original jurisdiction on administrative bodies." *Id.*; *see* TEX. CONST. art. V, § 8. There is no question that in the Tax Code, the Legislature intended to bestow exclusive original jurisdiction on appraisal review boards. *See* TEX. TAX CODE ANN. § 42.09; *Rourk*, 194 S.W.3d 502. Tax Code section 42.09, entitled "Remedies Exclusive," provides in pertinent part:

> (a) Except as provided by Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are *exclusive*, and a property owner may not raise any of those grounds:
>
> (1) in defense to a suit to enforce collection of delinquent taxes; or
>
> (2) as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

TEX. TAX CODE ANN. § 42.09(a) (emphasis added).[3]

## B.     UDJA Claims

Appellants first argue in their first issue that FCAD is immune from the Burnses' UDJA claims because the "Texas Property Tax Code is a pervasive regulatory scheme

---

[3] Subsection (b) provides that those who do not file administrative protests may still assert that (1) they did not own the property, or (2) the property was outside the boundaries of the taxing unit. *Id.* § 42.09(b). Neither exception applies here.

vesting appraisal review boards with exclusive jurisdiction over property tax disputes." Appellants claim, in other words, that although the Burnses have sought declaratory relief against FCAD, the Burnses are really attempting to reduce the appraised value of their property, which is a remedy that was required to be pursued through the administrative procedures of the Property Tax Code, not under the UDJA. Appellants also argue in their first issue that governmental immunity bars the Burnses' UDJA claims against FCAD because the Legislature has not waived governmental immunity with respect to those claims.

The Burnses do not directly dispute Appellants' arguments in their appellees' brief. Instead, the Burnses assert that they have invoked the UDJA to challenge the *ultra vires* actions of McKinley and Hahn, and the Burnses imply that they have not alleged UDJA claims against FCAD. But even if we conclude that the Burnses have alleged UDJA claims against FCAD, governmental immunity bars the claims.

Unless the Legislature expressly waives it, sovereign immunity generally deprives a trial court of jurisdiction over a lawsuit in which a party has sued the state or a state agency. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). Governmental immunity provides similar protection to the political subdivisions of the state. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). Tax appraisal districts, like FCAD, are political subdivisions of the state, TEX. TAX CODE ANN.

§ 6.01(c), and are therefore protected by governmental immunity. *See Norman*, 342 S.W.3d at 57–58.

The Legislature has not waived governmental immunity when a plaintiff seeks a declaration under the UDJA of his or her rights under a statute or other law. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam). The state or its subdivisions may be a proper party to a declaratory judgment action that challenges the validity of a statute. *Id.* at 622. But the Burnses are not challenging the validity of a statute; instead, they are challenging FCAD's actions under it. Moreover, a suit seeking declaratory relief for an *ultra vires* action must be brought against the government actors in their official capacity, not against the governmental entity, which retains immunity. *See id.* at 621.

Accordingly, to the extent that the Burnses have alleged UDJA claims against FCAD, FCAD is protected from those claims by governmental immunity, and the trial court therefore lacks jurisdiction over those claims. *See Sawyer Trust*, 354 S.W.3d at 388. Appellants' first issue is sustained.

### C. Tax Code Appeal[4]

Appellants first argue in their fourth issue that any appeal by the Burnses under the Property Tax Code for tax year 2019 is barred because the Burnses did not appeal the

---

[4] The Burnses' appeal from any appraisal review board's order must have been brought against only the appraisal district. *See* TEX. TAX CODE ANN. § 42.21(b).

order from the appraisal review board regarding tax year 2019 within sixty days after the Burnses received notice that the order had been entered.[5]

Again, the Burnses do not dispute Appellants' argument in their appellees' brief. Instead, the Burnses indicate that they appealed to the district court only the appraisal review board's order for the 2020 tax year.

In this instance, the Burnses' live petition is clear that the Burnses appealed to the district court the appraisal review board's order for only tax year 2020. Accordingly, the trial court did not err in denying Appellants' motion for summary judgment regarding an appeal by the Burnses under the Property Tax Code for tax year 2019.

Appellants next argue in their fourth issue that even though the Burnses appealed the appraisal review board's order for tax year 2020 within sixty days after receiving notice that the order had been entered, the Burnses still failed to invoke the district court's jurisdiction. Relying on *Covert v. Williamson Central Appraisal District*, 241 S.W.3d 655 (Tex. App.—Austin 2007, pet. denied), Appellants contend: "To the extent the [Burnses] seek to challenge only the $6,000 'HS UTILITIES ASSESSMENT,' a taxpayer cannot appeal the valuation of only a component part of his property as the [Burnses] sought to do here." *Covert*, however, is distinguishable from this case.

---

[5] The Legislature has mandated that all statutory prerequisites to suit are jurisdictional in suits against a governmental entity. TEX. GOV'T CODE ANN. § 311.034. Where a party suing the government fails to comply with a mandatory statutory prerequisite to suit, the courts are jurisdictionally barred from hearing the claim. *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 510 (Tex. 2012).

In *Covert*, the owners of three properties improved with car dealerships, each of which was appraised in a tax account that valued the land as well as the improvements, attempted to appeal the valuation of the "land portion only" of each property. *Id.* at 656–57. The appraisal district filed a special exception, contending that the owners failed to state a cause of action because the Tax Code provides no remedy for a taxpayer who claims unequal appraisal of only a portion of an appraised property. *Id.* at 657. The trial court granted the appraisal district's special exception and ordered the owners to replead. *Id.* When the owners refused to replead, the trial court dismissed the case, and the Austin Court of Appeals affirmed. *Id.* at 656–57. The court of appeals held that "a taxpayer challenging the equal and uniform assessment of an improved property under [Tax Code] section 42.26 must allege that the *overall* appraised value of the property is unequal." *Id.* at 661 (emphasis added). The court explained that an owner may allege and introduce evidence that only certain parts of its property were valued unequally, but it cannot prevail in its challenge unless it can show that the value of the entire appraised property is not equal or uniform as a result. *Id.* at 659 & n.6.

But the appraisal district in *Covert* filed a special exception; it did not challenge the trial court's jurisdiction, which is the issue in the present case. *See id.* at 657.

In 2013, the Legislature added subsection (h) to Tax Code section 42.21, which states:

> The [district] court has jurisdiction over an appeal . . . so long as the property was the subject of an appraisal review board order, the petition

was filed within [60 days after the party received notice of the order], and the petition provides sufficient information to identify the property that is the subject of the petition. Whether the plaintiff is the proper party to bring the petition or whether the property needs to be further identified or described must be addressed by means of a special exception and correction of the petition by amendment as authorized by Subsection (e) and may not be the subject of a plea to the jurisdiction or a claim that the plaintiff has failed to exhaust the plaintiff's administrative remedies.

TEX. TAX CODE ANN. § 42.21(h). The Burnses have met all the jurisdictional requirements. The trial court therefore has jurisdiction over the Burnses' appeal of the order from the appraisal review board regarding tax year 2020 and did not err in denying Appellants' motion for summary judgment regarding the appeal by the Burnses under the Property Tax Code for tax year 2020. Appellants' fourth issue is overruled.

### The Burnses' Claims Against McKinley and Hahn

In their second issue, Appellants assert that McKinley and Hahn "have official immunity for discretionary acts taken in the scope of their employment in appraising property in their district," and in their third issue, Appellants assert that "the chief appraisers' assessment of an improvement for utilities [is] authorized by [Tax Code section] 23.01."

In these issues, Appellants conflate derivative governmental immunity and official immunity, but they are separate matters. A suit against a government employee in his official capacity is a suit against his government employer; thus, a government employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011).

Government employees sued in their individual capacity, however, may not rely on the defense of governmental immunity. *See Tex. A & M Univ. v. Starks*, 500 S.W.3d 560, 576 (Tex. App.—Waco 2016, no pet.); *Cloud v. McKinney*, 228 S.W.3d 326, 333 (Tex. App.—Austin 2007, no pet.). Nevertheless, they may move for summary judgment and establish their entitlement to judgment as a matter of law by conclusively negating an essential element of the plaintiff's case or conclusively establishing all the necessary elements of an affirmative defense, including official immunity. *Starks*, 500 S.W.3d at 576; *see Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Cloud*, 228 S.W.3d at 333–34.

In Appellants' second and third issues, we are therefore actually presented with two distinct questions: (1) whether the trial court lacks jurisdiction over the Burnses' claims against McKinley and Hahn because McKinley and Hahn, having been sued in their official capacity, are protected by governmental immunity,[6] and (2) whether McKinley and Hahn were entitled to summary judgment because they, having been sued in their individual capacity, are protected by official immunity.[7]

The first step in resolving these questions is to determine whether the Burnses sued McKinley and Hahn in their official capacity, individual capacity, or both.

---

[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (allowing appeal from interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit"); *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840–46 (Tex. 2007) (holding that section 51.014(a)(8) vests appellate courts with jurisdiction to consider interlocutory appeals of jurisdictional pleas brought both by governmental entities and by employees of such governmental entities who have been sued in their official capacities).

[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5) (allowing appeal from interlocutory order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state").

The United States Supreme Court has observed that, "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004). In these cases, "'[t]he course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Graham*, 473 U.S. at 167 n.14, 105 S.Ct. 3099 (citations omitted).

*City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009).

Here, the Burnses' live petition identifies the parties as follows:

3.      [The Burnses] are individuals residing and owning property in Falls County, Texas.

4.      Defendant [FCAD] has appeared and answered.

5.      Allen McKinley (former Chief Appraiser) has appeared and answered.

6.      Andrew J. Hahn (current Chief Appraiser) has appeared and answered.

The Burnses then alleged in their live petition the following claims against McKinley and Hahn:  (1) the chief appraiser did not have authority to "make up" an assessment, (2) the chief appraiser assigned a predetermined flat value to an assessment, (3) the assessment is arbitrary and is not being applied equally, (4) the assessment is unlawful, is arbitrary, and is not based upon evidence as required by the Tax Code, (5) the chief appraiser shall appraise property at market value, and (6) the "HS UTILITIES" was an improper new improvement.  The relief requested by the Burnses is then that the trial court declare that

the "HS UTILITIES" flat value assessment for 2019 and 2020 is unauthorized, arbitrary, and/or unlawful and excessive and that it cannot form the basis for an added assessment.

All the Burnses' allegations relate to acts that McKinley and Hahn could only take in their capacity as chief appraisers. The relief requested also seeks to undo McKinley's and Hahn's acts in their capacity as chief appraisers. We therefore conclude that the Burnses have sued McKinley and Hahn in only their official capacity. McKinley and Hahn were thus not entitled to summary judgment based on being protected by official immunity. *See Starks*, 500 S.W.3d at 576; *Cloud*, 228 S.W.3d at 333.

The question remains, however, as to whether McKinley and Hahn, having been sued in their official capacity, are protected by governmental immunity.

The Burnses argue that McKinley and Hahn are not protected by governmental immunity because the Burnses have sought relief under the UDJA against McKinley and Hahn for their *ultra vires* actions. Appellants argue, however, as they also did regarding the Burnses' UDJA claims against FCAD, that although the Burnses have sought declaratory relief against McKinley and Hahn, the Burnses are really attempting to reduce the appraised value of their property, which is a remedy that was required to be pursued through the administrative procedures of the Property Tax Code, not under the UDJA.

While a legislative waiver of governmental immunity is usually required for suit against a governmental entity, an action alleging that a government employee acted *ultra*

*vires* is not a suit against the governmental entity that governmental immunity bars. *See Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015); *Franka*, 332 S.W.3d at 382–83. An *ultra vires* action is one in which the plaintiff seeks relief against a government employee in his official capacity who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act. *See Heinrich*, 284 S.W.3d at 368.

> *Ultra vires* suits are subject to certain qualifications. *See* [*id.*] at 373. . . . [R]etrospective monetary claims are generally barred. [*Id.*] at 374 (holding that because an *ultra vires* claim is against the State, "its remedies must be limited"). Thus, *ultra vires* claimants are only entitled to prospective relief. *Id.* at 374–77. . . . If the injury has already occurred and the only plausible remedy is monetary damages, an *ultra vires* claim will not lie. *Id.* at 374 (quoting *City of Houston v. Williams*, 216 S.W.3d 827, 828 (Tex. 2007)).

*City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018).

Furthermore, "a litigant's request for declaratory relief does not alter a suit's underlying nature. It is well settled that 'private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a declaratory-judgment claim.'" *Heinrich*, 284 S.W.3d at 370–71 (footnote & citations omitted) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 856 (Tex. 2002)).

Here, the Burnses' live petition states that they are seeking declaratory relief against McKinley and Hahn for their *ultra vires* actions. But the Burnses' live petition identifies McKinley as the *former* chief appraiser and complains only of McKinley's

actions in 2019. Any injury to the Burnses by McKinley has therefore already occurred, and the only plausible remedy that the Burnses may obtain from McKinley is monetary damages. McKinley thus remains protected by governmental immunity, *see id.* at 374–77, and the trial court therefore lacks jurisdiction over the Burnses' claims against him, *see Sawyer Trust*, 354 S.W.3d at 388.

Hahn, on the other hand, is identified as the *current* chief appraiser. Moreover, in reviewing a jurisdictional challenge to a plaintiff's pleadings, we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Having construed the Burnses' live petition liberally, we conclude that the declaratory relief that the Burnses seek against Hahn would not affect them only retrospectively. Accordingly, we conclude that the Burnses are not attempting to simply recharacterize a suit for money damages against Hahn as a declaratory judgment claim against Hahn.

Appellants next argue that the legislative grant of authority relevant to this case is broad enough to bar the Burnses' alleged *ultra vires* claims. Appellants point out that complaints that a governmental actor merely "got it wrong" while acting within their authority remain shielded by governmental immunity. *See City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 310 (Tex. App.—Austin 2017, pet. denied). Appellants further argue that whether Hahn acted within his statutory authority is a legal question for which summary judgment is appropriate.

Construing the Burnses' live petition liberally, we conclude that the basis of the Burnses' claim is that Hahn is acting without legal authority in determining the market value of their property because the Burnses' petition alleges that Hahn has essentially "made up" the assessment of "HS UTILITIES" in the predetermined flat value amount of $6,000.00 and has arbitrarily assigned it to their property.

An *ultra vires* claim based on actions taken "without legal authority" has two fundamental components: (1) authority giving the government employee some (but not absolute) discretion to act and (2) conduct outside of that authority. *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017).

Tax Code section 6.01 provides that "[a]n appraisal district is established in each county" and that "[t]he district is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." TEX. TAX CODE ANN. § 6.01(a), (b). Tax Code section 23.01(a) further provides: "Except as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1." *Id.* § 23.01(a).

The chief appraiser of the appraisal district is responsible for determining the market value of the property. *See id.* §§ 23.01–.9808. Tax Code section 1.04(7) defines "market value" as:

> [T]he price at which a property would transfer for cash or its equivalent under prevailing market conditions if:

(A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;

(B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

(C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

*Id.* § 1.04(7). The chief appraiser therefore has discretion in determining the market value of the property, but the discretion is not absolute. Tax Code section 23.01(b) provides:

> The market value of property shall be determined by the application of generally accepted appraisal methods and techniques. If the appraisal district determines the appraised value of a property using mass appraisal standards, the mass appraisal standards must comply with the Uniform Standards of Professional Appraisal Practice. The same or similar appraisal methods and techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value.

*Id.* § 23.01(b).

Furthermore, the Burnses have not simply alleged that Hahn got the market value of their property wrong; rather, the Burnses have alleged that Hahn is acting outside of his statutory authority. Although the Burnses do not explicitly allege in their live petition that Hahn has violated Tax Code section 23.01(b), the allegation can be reasonably inferred from the Burnses' allegations that Hahn is acting without legal authority in determining the market value of their property because the Burnses' petition alleges that

Hahn has essentially "made up" the assessment of "HS UTILITIES" in the predetermined flat value amount of $6,000.00 and has arbitrarily assigned it to their property.

Finally, as stated above, Appellants argue that whether Hahn acted within his statutory authority is a legal question for which summary judgment is appropriate. Citing *Bosque Disposal Systems, LLC v. Parker County Appraisal District*, 555 S.W.3d 92 (Tex. 2018), Appellants assert that appraisal districts are free to separately assign and assess components of real property.

But such conclusion does not resolve all the issues in this case. For instance, the conclusion does not resolve whether Hahn applied "generally accepted appraisal methods and techniques" in determining the market value of the Burnses' property. *See* TEX. TAX CODE ANN. § 23.01(b). Likewise, the conclusion does not resolve whether Hahn took into account "all available evidence that is specific to the value of the property" in determining the market value of the Burnses' property. *See id.* And these issues involve fact questions that go to the merits of the Burnses' claims.

We conclude that the Burnses have therefore pleaded a viable *ultra vires* claim against Hahn. Accordingly, Hahn is not protected by governmental immunity. *See Sw. Bell Tel., L.P.*, 459 S.W.3d at 587; *Franka*, 332 S.W.3d at 382–83. Appellants' second and third issues are sustained in part and overruled in part.

## Conclusion

We reverse the trial court's order denying Appellants' third amended motion for summary judgment to the extent that it denies summary judgment on the Burnses' UDJA claims against FCAD. We render judgment that the Burnses' UDJA claims against FCAD are dismissed with prejudice.

We further reverse the trial court's order denying Appellants' third amended motion for summary judgment to the extent that it denies summary judgment on the Burnses' claims against McKinley. We render judgment that the Burnses' claims against McKinley are dismissed with prejudice.

We otherwise affirm the trial court's order denying Appellants' third amended motion for summary judgment.

MATT JOHNSON
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed in part and reversed in part
Opinion delivered and filed March 23, 2022
[CV06]

